## BERGIN *v.* McFARLAND.

The deed of an administrator of the real estate of his intestate, under a license from the court of probate, though defeasible by the heirs, may convey a good title to hold the property until the administration of the estate is closed.

An administrator's deed made *pendente lite*, will be a good defence under a plea *puis darrein continuance* to an action brought by the heirs, if such deed is made to the tenant, or some person under whom he claims, and may be so if made to a third person.

WRIT OF ENTRY, to recover certain lands of which S. Bergin, deceased, father of the demandant, died seized. Upon the death of Samuel Bergin, his estate was decreed to be administered as an insolvent estate, and the administrators proceeded so to administer it. For a time the administrators rented the said real estate. In the meantime, they petitioned for and obtained a license from the court of probate to sell said real estate, proceeded to advertise and sell, and in pursuance of the sale, conveyed the same to the tenants, or those under whom they claim, who thereupon entered upon said estate, and have occupied the same since.

These actions were brought by the demandant, as one of the heirs at law, at the November term, 1848. Whereupon the administrators, ascertaining that the proceedings in making said sales were defective, from the loss of papers and other causes, and the title conveyed by them was likely to fail for those reasons, petitioned the court of probate for a new license to sell the said land, and upon an appeal to the superior court, at the July term, 1851, the court of probate was ordered to grant a license in accordance with said petition, and the said court accordingly granted a new license. For the purposes of the case, the parties agreed that the first sale made by the administrators, is invalid; and if the superior court should be of opinion, upon the above statement, that the plaintiff is entitled to recover in this action, the cause to be remanded to the court of common pleas for trial; if they

should be of the opinion that the plaintiff is not so entitled thereupon, judgment to be ordered for the defendant.

*Burns & Fletcher,* for the plaintiffs.

Upon the death of the ancestor, his real estate descends to his heirs. Rev. Stat. ch. 166, § 1. The ancestor was seized at the time of his death. The administrator had made an invalid sale to the tenants. The tenants, then, had no title at the commencement of the suit, nor have they now.

But the plaintiff must recover, if he recovers at all, upon the strength of his own title, and not on the weakness of the defendants. Had the plaintiff, then, any title at the commencement of the suit?

The real estate of the deceased vested in his heirs. Rev. Stat. ch. 159, § 13. If the real estate vested in the heirs, upon the decease of the intestate, they can sustain an action against an intruder who has no title.

The administrator's sale to the tenants was defective, and although the administrator had a right to rent the lands as he did, and to sell them legally, as he might, for the payment of debts, still, when he made an invalid sale, the heirs could rightfully commence and sustain suits against purchasers.

When the administrator made the sale the administration was closed, so far as the lands were concerned.

*J. W. & G. C. Williams,* for the defendant.

The main question we understand to be raised in this case is, whether the heir is so seized as to be able to maintain this action. Allow it to be well settled that real estate at common law vests in the heir immediately upon the decease of the ancestor. The act of January 2, 1829, 1 N. H. Laws, (ed. 1830) 370, provides, in substance, that it shall be the duty of the administrator of estates represented insolvent, and he is authorized and required to keep in repair the real

estate and receive the profits of the same, and that he shall be holden to account for the net proceeds thereof. Section 2 of the same act authorizes the administrator to maintain all actions necessary to carry these provisions into effect.

The Revised Statutes condense but retain the same provisions, (ch. 159, § 10,) providing that the administrator shall receive the rents and profits of the real estate, in case the estate is insolvent, shall keep the same in repair, and shall account for the net proceeds thereof in his account.

In accordance with these and similar provisions, we understand the courts in this State have held that the administrator, in such cases, has possession sufficient to maintain and defend real actions, as in *Smith* v. *Smith*, 11 N. H. Rep. 459.

Now in this case the estate was represented insolvent, and the administrator entered and rented the same real estate now in question. It has been in the actual possession of the administrator and those entering under him, either as tenants or as supposed purchasers, from that time to this.

The possession of these premises is adverse to the heir, and though not warranted by the invalid sale, is yet under the administrator, and must make him accountable for the rents and profits, as of tenants, if he had not been otherwise. The administrator is to be considered as in fact holding actual possession thus far, and now has a license according to the decision of the superior court, to sell the same, as if he had never before been licensed.

But we suppose the statute itself vests in the administrator of estates represented insolvent, the possession and the right of maintaining and defending all real actions in reference to the same, and that in such case the heir has no right of action until the close of the administration. Whether he has any right of maintaining an action of the case, or other proceeding to restrain injury to the contingent interest the heirs may hereafter have in the premises, is

another question. We say he cannot maintain a writ of entry.

The case of *Bean* v. *Moulton*, 5 N. H. Rep. 450, fully recognizes this principle, that the tenant in a real action may show that the estate was represented insolvent, and the possession in the administrator, by virtue of this statute, as against the heirs, though in that case the principle could not be applied, that being an estate not represented insolvent.

BELL, J. At common law, the real estate of a deceased owner at once vested in the heir at law or devisee. As such, the heir or devisee was at once entitled to maintain any action, real or personal, which he might find necessary for the protection of his rights. *Bean* v. *Moulton*, 5 N. H. Rep. 450. The personal representative of the deceased had, as such, no rights whatever, connected with the real estate. His duties and his powers were entirely confined to the personal estate and choses in action of the deceased. *Gibson* v. *Farley*, 16 Mass. 280.

By an early British statute, lands in the colonies were subjected, equally with the personal estate of the debtor, to the payment of his debts. Stat. 5 George II. Prov. Stat. of N. H. 1771, p. 233.

And by very early statutes, both of Massachusetts and of this province, power was conferred upon executors and administrators to sell the real estate for the payment of debts, in case the proper courts, upon application, should deem the sale necessary or proper, and should grant a license for that purpose. N. H. Prov. Stat. 1771, p. 90, 4 George I.; Mass. Prov. Stat. 1742, p. 75, 8 Wm. III. But the authority given by such license was deemed a mere naked power to sell, unaccompanied by any interest; and the estate was deemed, notwithstanding, to vest at once in the heirs, subject to be divested by a proper sale under the license.

Until the estate was thus taken from them, the heirs were

entitled to enter upon the property, to maintain the exclu-
sive possession, to take the profits to their own use, and to
maintain actions against any persons who should interfere
with the possession, precisely as the original owner might
have done. *Bean* v. *Moulton,* before cited. The personal
representative, as such, even after a license, had no right to
enter and occupy, to take the profits or maintain any action
relative to the real estate. 16 Mass. Rep. 285.

An important change was made in these respects by the
statute of 1829, substantially reënacted in the Revised Stat-
utes. It is there provided that the administrator shall re-
ceive the rents and profits of the real estate, in case the
estate is insolvent, and shall keep the same in repair, and
shall account for the net proceeds thereof in his administra-
tion account; ch. 159, § 10. And the administrator may,
as such, maintain any action necessary and proper to be
brought in relation to the real estate of the deceased, in
cases of insolvency, until the administration is closed; ch.
161, § 19.

These statute provisions gave to the administrators of in-
solvent estates a special and limited estate, to continue until
it should be terminated by a valid sale, under a license from
the court of probate, or until the close of the settlement of
the estate, if a sale should not be necessary. During the
continuance of this estate, no action could be maintained
by any of the heirs against the administrators themselves,
or against any person who could show a title under them.

There is nothing in the case, as here stated, which shows
when administration was granted, nor when, if ever, it was
closed. We may, therefore, for the present purpose, assume
that the settlement of the estate is yet in progress, and the
administration not closed.

The question, then, presented by the case is, whether the
heirs can maintain a real action against the grantees of the
administrator, pending the administration, where the admin-
istrator's deed, from some deficiency or illegality of the pro-

ceedings, from loss of papers or other causes, is inoperative against the heirs. It is very clear that a defect in the proceedings relative to the license and sale may make the estate, which is attempted to be conveyed, defeasible as to the heirs, while the same conveyance may be valid and binding as between the administrator and the purchaser, and absolutely indefeasible by the administrator.

The brevity of the case does not enable us to collect what were the precise defects which led the administrator to believe that the proceedings were insufficient; but nothing is suggested of any defect in the deed, and we may, therefore, assume that the deed, in itself, is well enough. Such deeds usually contain, a recital of the license, and covenants that the grantor has complied with the requirements of the law to enable them to make a good title. By his deed the administrator would ordinarily be bound, and the deed would convey a title, good against him, however it might be as to others.

The Revised Statutes have adopted and made general a principle, applied at common law in some cases, that a " conveyance made by any person having a limited interest in any estate, purporting to convey a greater interest than he possessed or could lawfully convey, shall not work a forfeiture thereof, but shall pass to the grantee all the estate which he could lawfully convey." Rev. Stat. ch. 129, § 6.

Upon this principle, the conveyance of the administrator passed to the grantee all the limited interest and qualified estate given him by the law, the right to receive the rents and profits, and, of course, for that purpose to keep the possession until the administration of the estate is closed. This estate, limited as it is, is not defeated by an ineffectual attempt to sell and convey the fee, and it constitutes, while it continues, a perfect title to the purchasers as against the heirs. So that, upon the facts presented to us, the plaintiffs fail to maintain their action.

If it were in the power of the plaintiffs to show that the

administration of the estate of the deceased ancestor was once closed, so that the estate given by the statutes to the administrator had come to an end, it might well be contended that though the administration might be opened for some purposes, as for the purpose of granting a new license, where necessary papers or proof had been lost, yet that the estate of the administrator once terminated, could not be thus revived.

But this result, if admitted to be correct, would not probably be of service to the plaintiff. Supposing that he were, upon the facts before us, entitled to recover, yet if the property should be sold, or if it has already been sold by the administrator, in pursuance of the license directed by this court, to be granted by the court of probate for the county, that sale must divest the plaintiff's title wholly. And if that sale is made to the defendant himself, or to any person under whom he may have a right to protect himself, (*Bailey* v. *March*, 3 N. H. Rep. 274,) he may set forth these facts by a plea *puis darrein continuance* and will then be entitled to judgment.

And although it was held in the case of *Bean* v. *Carroll*, 5 N. H. Rep. 540, that the right of the heir to recover will not be defeated by showing a sale of the estate by the administrator to a stranger, or by such sale to the tenant himself, as in *Tainter* v. *Hemenway*, 7 Cush. 573; yet we apprehend that doctrine must be restricted to cases like that then before the court, where the trial was had upon the general issue. Where the title of a demandant is terminated by his own act, or by a condition or limitation affixed to it in its origin, or is superseded by a paramount title pending a suit, we regard it as generally true, that the tenant may take advantage of that fact to defeat the action, by a plea *puis darrein continuance*. *Walcot* v. *Knight*, 6 Mass. 418; *Bailey* v. *March*, 2 N. H. Rep. 523; *Walcutt* v. *Spencer*, 14 Mass. Rep. 410; *Gould* v. *Newman*, 6 Mass. Rep. 241; Stearns' R. A. 226; 1 Com. Dig. Abat. H. 56.

And upon this view it would be immaterial to whom the sale should be made by the administrator. Its effect would be to divest and destroy all the demandant's title ; and this fact, properly pleaded, would be a perfect answer to the action.

According to the provision of the case, there must be

*Judgment for the defendant.*